**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BRANCH and BETHEL, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 24, 2017**

# In the Court of Appeals of Georgia

A17A1328. KELLY v. FANN.

MCFADDEN, Presiding Judge.

While driving on a state highway at night, Vanessa Fann struck a bull that was loose in the road; she then lost consciousness, crossed into oncoming traffic, and collided with a truck driven by Lonnie Kelly. Kelly brought a personal injury action against Fann,[1] alleging that she had failed to keep a proper lookout. The trial court granted summary judgment to Fann, and Kelly appeals. Finding no error, we affirm.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). This [c]ourt applies a de novo standard of review to an appeal from a grant of summary

---

[1] Kelly also sued the bull's owner and Fann filed a counterclaim against Kelly and a cross-claim against the bull's owner. Those actions are not a part of this appeal.

judgment and we view the evidence in the light most favorable to the nonmovant." *Davis v. Overall*, 301 Ga. App. 4, 5 (686 SE2d 839) (2009) (citation omitted).

So viewed, the evidence showed that on March 11, 2015, a bull with a black body and a white face escaped from a livestock trailer and ran away; the bull weighed approximately 775 pounds and was approximately five feet tall and six to seven feet long. For several hours, people on foot and on horses searched for the bull. During the hunt, if people got close to the bull it would "just go berserk[;] just take off running." It was spotted several times near a four-lane state highway that was adjacent to some woods and was divided by a wide median with grass three to four feet high. Some of the people involved in the hunt parked their vehicles, with lights flashing, on the eastbound side of that highway. These vehicles remained parked there for the duration of the hunt, until the collision between Fann's vehicle and the bull occurred. At times, a police car was also parked on the eastbound side of the highway.

Around 6:00 p.m., Fann traveled east on the highway past the parked vehicles, but she did not notice them. A few hours later, at approximately 9:00 to 9:15 p.m., Fann passed the same spot driving west on the highway, driving in the outside lane (closest to the side of the road). By that time night had fallen and the unlit highway

2

was dark. However, it was a clear evening, Fann was using her headlights on low beams, and her view was unobstructed. She did not notice the vehicles with flashing lights parked on the other side of the divided highway.

Between 150 and 200 yards past the spot where the vehicles were parked, Fann struck the bull. She was driving below the speed limit at the time. She deposed that she did not see the bull until she hit it; she then glimpsed its face briefly on the driver's side of her windshield before she lost consciousness. After Fann lost consciousness, her car crossed the grassy median into the eastbound lanes of the highway and struck a commercial tractor-trailer driven by Kelly. Kelly deposed:

> I saw a car coming, coming around the curve headed west. I was heading east. I saw the car coming. The next thing I knew, I looked out my window and the car was like right there and then, you know, she hit me in the back tandem [tires ] and that was it. . . . I would say the car was probably in the middle of the median the next time I saw it, you know, because I was going one way and she was going the other. It was just a matter of seconds because, when I looked over there, I would say in the middle of the median. And the next thing I knew, she hit me. I didn't know who it was at the time, but I knew I was hit.

3

The record contains deposition testimony from persons, including Fann and Kelly, who were present when the accident occurred. None of these persons saw the bull standing either in the highway or next to the highway at the time of or immediately before the accident. Fann testified that she did not know which direction the bull came from or whether it was walking, running, or standing when she hit it.

"Every driver is under a duty to keep a proper lookout for potential hazards. A driver has no right to assume that the road ahead of him is clear of traffic, and it is his duty to maintain a diligent lookout ahead." *Hayes v. Crawford*, 317 Ga. App. 75, 78 (730 SE2d 26) (2012) (citation and punctuation omitted). Nevertheless, "negligence is not to be presumed, but is a matter for affirmative proof. In the absence of some affirmative proof of negligence, we must presume performance of duty and freedom from negligence." *Brown v. DeKalb County*, 333 Ga. App. 441, 444 (777 SE2d 23) (2015) (citation and punctuation omitted). The fact that "an accident occurred and a plaintiff suffered injury establishes no basis for recovery unless the plaintiff comes forward with evidence showing that the accident was caused by the defendant's negligence." Id. at 443 (citation and punctuation omitted).

Kelly argues that the evidence that Fann drove past parked vehicles with flashing lights creates a question of fact as to whether Fann breached her duty to

4

maintain a proper lookout. We disagree, because there is no evidence that Fann would have "had a sufficiently clear view of the [bull in the highway] and . . . had more than sufficient time . . . and distance . . . to stop [her car] safely, had [she] been sufficiently attentive to the roadway in front of [her]." *Hayes*, supra, 317 Ga. App. at 79. Compare *Young v. Kitchens*, 228 Ga. App. 870, 872-874 (3) (492 SE2d 898) (1997) (reversing summary judgment to driver where there was some evidence that driver could have seen and avoided striking injured person lying in roadway). If the bull entered the highway moments before the collision, Fann would not be liable. See *Mayo v. Old Dominion Freight Lines*, 302 Ga. App. 19, 22 (689 SE2d 837) (2009) (driver would not be liable in wrongful death action if jury found decedent had suddenly stepped into driver's path before being hit); *Tucker v. Love*, 200 Ga. App. 408, 409 (1) (408 SE2d 182) (1991) (plaintiff in wrongful death action not entitled to jury instruction that defendant bus driver had duty to discover decedent in roadway where evidence showed decedent entered street to the side of, and not in front of, moving bus); *Lovell v. Howard*, 182 Ga. App. 891 (2) (357 SE2d 600) (1987) (finding no evidence that driver who struck horse on road at night was not paying sufficient attention, where driver was traveling under the speed limit with operating headlights and horse came from driver's left moving perpendicular to her path); *Johnson v. Ellis*, 179 Ga. App.

5

343, 345 (346 SE2d 119) (1986) (affirming directed verdict to driver where evidence showed that inebriated pedestrian was walking to the side of, not in front of, driver's moving vehicle and there was no evidence that pedestrian "was actually on the roadway prior to his moving into the collision"). If, on the other hand, the bull was standing in the road in front of Fann's car, she might be liable. See *Fountain v. Thompson*, 252 Ga. 256, 257 (312 SE2d 788) (1984) (driver was not entitled to directed verdict where there was evidence that pedestrian was lying in the roadway in front of driver's vehicle).

As the above decisions reflect, if the evidence in this case were in conflict about where the bull was and what it was doing at the time of the collision, summary judgment would not be appropriate. See *Mayo*, 302 Ga. App. at 22 (wrongful death action not susceptible to summary adjudication where the evidence was in conflict as to whether pedestrian was standing in road or had suddenly stepped into path of truck when hit). But the evidence is not in conflict. Instead, there is *no* evidence — direct or circumstantial — about where the bull was or what it was doing immediately before Fann collided with it. No witness saw the bull immediately before the accident. It could have been standing in the highway or it could have walked or run into the highway in front of or into Fann's vehicle. It could have emerged, moments before

6

the collision, from the grassy median on one side of the westbound lanes or from the woods on the other side of those lanes. A jury could only speculate on these issues, and "[g]uesses or speculation which raise merely a conjecture or possibility are not sufficient to create even an inference of fact for consideration on summary judgment." *McKissick v. Giroux*, 272 Ga. App. 499, 500 (612 SE2d 827) (2005) (citation and punctuation omitted).

Because there is no evidence of how Fann's collision with the bull occurred, "there is no evidence of anything [Fann] could have done to avoid the collision." *McQuaig v. Tarrant*, 269 Ga. App. 236, 238 (603 SE2d 751) (2004). We therefore affirm the trial court's grant of summary judgment. See *Politzer v. Xiaoyan*, 342 Ga. App. 224, 227-228 (2) (801 SE2d 114) (2017) (where there was no evidence that driver was speeding or violating any rules of the road, or saw pedestrian before hitting her, and there was no evidence supporting suggestion that driver must have failed to exercise due diligence before striking pedestrian, summary judgment was appropriate).

*Judgment affirmed. Branch and Bethel, JJ., concur*.

7